Here are the East Brunswick European Wax case, please. All right, here we are, the last shall be first. Thank you, Judge. Good afternoon. Good afternoon. My name is David Jasinski. I'm here on behalf of the petitioner, East Brunswick European Wax Center. Before I get started, Judge Phipps, I will not say the word snapshot in the argument. Judge Greenaway, with regards to any rebuttal, I'll ask for two minutes. Two minutes, very good. Okay. This is a case of a default proceeding, and this court has been consistent that it will not rubber stamp, it will not act in any mechanical action in order to just agree with and approve what the NLRB does in this proceeding. And the reason for that is that in the Livingston case, the court has said that judicial scrutiny is necessary in order to prevent there to be any injustice. This particular proceeding, Your Honors, the petitioner signed a settlement agreement, agreed to comply with the terms of that settlement agreement. There was two components of that settlement agreement. One was to make the individual whole, that being Ms. Zambrano whole, for any loss that she had. The second aspect of it was remedial in nature. So are we, do we have jurisdiction to review merely the decision to grant the default, or are we permitted, do we have jurisdiction to review the board's imposition of a new remedy? You definitely have the jurisdiction in this particular matter, and I think, Judge, what you're looking at is are there extenuating circumstances for this particular court to look at what was signed on behalf of the petitioner in this particular proceeding. And I submit to you that the extenuating circumstances in this case fall under a number of other, a number of areas. One is the fact that there was substantial compliance on the part of the petitioner in this particular proceeding. They paid the $20,000 to make whole. They signed the notice. They posted the notice. They read the notice. They sent the notice to the employees via e-mail. Actually, my question was only procedural, right? Is technically what we have jurisdiction to review merely the grant of the default, right, or can we look at the remedy? Well, you can clearly look at the, you have the jurisdiction to look at the remedy in this particular proceeding. Okay. And with regards to the extenuating circumstances, the petitioner substantially complied with the terms of the settlement agreement that was entered into. So let me just start there because substantial compliance is this great doctrine of contract law, right? Like we look at breach differently. We look at everything differently based on substantial compliance. But parties can contract out of substantial compliance. And it looks to me like the parties in the settlement agreement contracted out of the substantial compliance kind of, you know, baseline principle of law. It says, quote, the charge party agrees in the case of noncompliance with any of the terms of this settlement agreement by the charge party. Quote, that's the end of the quote. Then it starts again. The regional director will issue a complaint that includes the allegations covered by the notice to employees. So substantial compliance might really be in your favor if you didn't agree to these terms, if your client didn't agree to these terms. But now your client says everything's substantial, including text versus e-mail. Well, in this particular proceeding, I think substantial compliance is, I think the court has to look beyond that. And because it's not, you're dealing with, this is just a straight contract, if that was the case. And if that's it, then the board could put that term in. And if the individual does one minor thing, and here I would argue there wasn't a, it was a mere technicality. Is it to be text or to e-mail? That's what it comes down to. I mean, the heading is electronic notice. Yes. So we already know that you bought some type of notice. Yes. And then it specifies text. Now, you may argue that at the end of the day you gave better notice, you did other things that were more reliable. Right. But you've got something going on. I mean, at a minimum, don't you have to say that since we agreed to a settlement that says we have to do every term in it, that you have to at least go out and text everyone? Well, and I think that's where, in addition from the extenuating circumstances, there's a genuine issue of fact here in this proceeding. And that genuine issue of fact was that when the prior counsel, when they submitted their opposition to the default judgment, they submitted a number of documents. And some of those documents dealt with payroll records. And in those payroll records, it said the best way to communicate with the associate, and in this case that would be with Ms. Zambrano, was via e-mail. And in those documents, there was no reference to any cell phone. There was an e-mail address. There was no cell phone. But isn't the issue, though, I mean, at one level you're challenging the remedy when you say the remedy is punitive. Yes, correct. I guess what my question is, maybe that argument has legs for a lot of things, right? Reinstatement of a person who didn't want reinstatement, right? Okay. Might have a good argument there. But it's not punitive when it comes down to now we have to text, right? And so if the only remedy was we'd like to see you text everyone, that might not be a problem. Well, and so do you pose that as a remedy? Well, that very well could have been the remedy. That could have been as opposed to saying that, well, you now owe the individual. We're now going to have a compliance hearing in terms of reinstating someone for someone three years down the road or four years down the road. So if I hear you correctly, you're saying that could have been a viable remedy. Yes. But the remedies that were done in place of that were not viable remedies. They violate the arbitrary and capricious. They're punitive. And because of that, we would like that remedy order vacated. That's correct. Well, here's what I don't understand. Sure, Dick. I don't understand why your retort to the judge isn't the following. Full compliance is clearly in the contract, right? And you essentially contracted away substantial compliance. However, that's a common law doctrine. And if you look at the restatement, it's very clear, you know, if you contract for full compliance. Except there's an exception to that, right? Disproportionate forfeiture, which goes exactly to your point of a punitive remedy. Are you familiar with disproportionate forfeiture? Well, I didn't argue in the brief, Judge, but it clearly raises the question, from my perspective, as far as the punitive nature of what the board did in this particular proceeding. So you would embrace disproportionate forfeiture as a retort to the common law doctrine of full compliance? Absolutely. And so if that's the case, I guess if that's the case, then your answer is any remedy would have been too much because we met our obligation. You don't have to get to the, this remedy was punitive. Now, granted, they kind of tilt on the same thing, I guess, sooner or later. There's a lot of overlap there. So one is a little maybe legally cleaner because we don't get into the punitive, but the other is got a lot of evidence that maybe something, a lot of this redress strikes you as strange considering it was emailed, not texted. It seems strange to go reinstate someone who doesn't want reinstatement because a notice was emailed, not texted. I'm having a really hard time. The board's going to come up and maybe I can ask them that question, but I'm having a hard time with that one. Is there anything in the record, just following up on, you got your, yeah. Is there anything in the record to show that there was any palpable disadvantage with regard to notice, like for instance, anyone not receive notice or any disparity among the populace in receiving this notice? Well, it's an interesting comment that you make, Your Honor, because this is a small operation. It's extremely small. And the remedy that existed here in this matter was that there was notice of reading the notice, the NLRB notice. There was emailing the notice to the individuals. The NLRB came down and read the notice a third time to these individuals. And I think one of the most important factors that is disregarded by the NLRB in this proceeding is that there was never any violation after this. This was not an employer that engaged in recidivism. This was not an employer that there was any repeated. And the delay with regards to this, this matter happened in 2016. We're now in 2021 entering into 2022. That there has been no other violations of any nature with regards to any threats, anything that was set forth in the notice. So there's nothing in the record that suggests that no one was aware of it. And what's even more important, the petitioner in this case, maybe the NLRB did it on purpose, was to delay going in for the order for default, was to see whether or not there were going to be any other instances. Because if there were, then I think that that argument, then I think the NLRB would have a much stronger argument than I believe that they have today. Judge Cowen? Counsel, why should we, as a court, question what the NLRB in their expertise determined is the right way they wanted those to be given? They're the experts in this. We're not labor experts. No. Why should we question their decision? Because I think that their end result is an injustice to the petitioner in this particular proceeding. They did everything in our view that they were required to do, and they did it in a prompt fashion. In fact, Judge Cowen, I would say that they went over and above what was asked of them of the NLRB. And to grant the petition and the enforcement would, in our view, be a grave injustice to this particular entity. If there are no other questions, I'll rely on our briefs. Thank you, Judge. Do you want to come back on rebuttal? Well, if you want me back, I'll come back. I won't say snapshot, though. I assure you that that will not come out. Good afternoon, Your Honor. David Seif for the Labor Board. Before addressing the remedy question that was raised with opposing counsel, I would like to just make a few initial points as to why the board's order is not an abuse of discretion. The company entered into a voluntary settlement agreement. These were not terms dictated by the region. It's a give-and-take between the company and the region and the charging party. Not every settlement agreement contains multiple mechanisms for how the notice needs to be distributed. Not every settlement agreement contains non-admissions clauses. In fact, the board's case handling manual strongly discourages non-admissions clauses in settlement agreements. And not every settlement agreement contains default language provision. So in culmination, the different terms that appeared in this agreement were not dictated. They were worked out in a give-and-take between the parties. Thereafter, the region gave the company multiple opportunities to fully comply. Initially, it didn't comply at all, and in dribs and drabs, it started to. And at the time the board, the region finally sought a default judgment to reissue the complaint, there were multiple aspects of what it needed to do that were still outstanding. Can we stop there just for a moment, please? You know, I'll admit, the first time I read through the facts, I said, oh, wow, this is outrageous, because I looked at that date that you've just alluded to, which is like the default is sought a year later, and it looked like they hadn't complied. But then, you know, dig a little deeper, and you realize that it was maybe like, I don't know, six or seven weeks after the initial that they complied. Now, I thought the date, and tell me if I'm wrong, that they complied on texting, because that's what we're talking about, right, texting? Your Honor, they did not comply on the texting. Well, I thought they complied in April. Is that not right? No, Your Honor, they never complied with the texting requirement. Tell me why that's not right, because I thought that you had sent a notice in February, in March, I want to say in May or June, and then the default is almost a year later, but that it came out in the wash that they had actually texted the employees in April. Is that not correct? Your Honor, that is not correct. When the region reissued the complaint and sought default judgment in June, or when they said they kind of gave it a last warning in June of 2017, there were a number of outstanding requirements, and that included sending the text by notice, rescinding the reference to the warning that was given to an employee and the discharge of an employee from the files, and also returning the compliance forms. So the notice was never sent by text. I apologize. I didn't mean text. It was e-mail. Your Honor, it was sent by e-mail. I'm putting aside the settlement agreement required certain language to be sent along with the notice. So even putting aside the text, and I will say text, there's a reason text was in there. That was worked out and that was negotiated. There is a reason that was in there. It's not an accident. It purposely said text over e-mail. I can't tell you I wasn't part of that. I don't know what the reasons were, but there's a reason it was in there and it was agreed to and signed by the parties. Even putting that aside for the moment, even the e-mail that was sent, there was certain language that was supposed to be included when the message was texted to employees, and the record doesn't actually indicate that the company, even when they e-mailed the notice, even did so including the preparatory language as to why it was being e-mailed. But putting that aside for the moment, no pun intended, after all these opportunities to comply, which it did not do, the board reasonably found there was no material fact before it because there was no dispute the notice wasn't texted and therefore did not abuse its discretion by issuing its order. I mean, at what level your argument provides all the reason for why the board was punitive, right? You're saying, hey, it took them so long to comply. We had to work with them. We had to monitor them. We had to ride them basically to get them to comply. And then when we had one thing left that they didn't comply with, then we went really, really strict. Your argument almost builds its own case for a punitive exercise of discretion, right? It would be not because you say, hey, we were so frustrated with them. That's why we went with a remedy that was pretty big. I've never heard of the order to reinstate an employee who doesn't want to be reinstated. I mean, that's – is that common? You're telling us what's common in these agreements. I don't think that's common. First, and there is a very strong TANI waiver, TANI no jurisdiction argument here, but to address your question, I do understand the court's concern because I think there's a misconception as to what the full remedy actually means. The settlement agreement said that if no terms – if any term is not complied with, that there could be issuance of a full remedy, and that's exactly what the general counsel asked for when it reissued the complaint and filed for a default judgment. In context of a full remedy, and let me – by analogy, there's a case that was cited in the board's brief called LJ Logistics. And that was a situation where the employer paid some of the money to an employee that was owed but not all of it. And then the board's order in granting default judgment doesn't simply say pay the remaining money, but it issues what's called a full remedy. So in this context, as far as reinstatement goes, as long as at some point during this process, and very likely when the individual accepted money in exchange for not returning to work, as long as the company at that time made what would be considered a valid offer of reinstatement, it is not going to have to offer reinstatement again. It is not going to be on the hook for multiple years of back pay. It would just simply need to show that at the time of this settlement, there was a valid offer of reinstatement made. Now, theoretically, at the time the settlement was reached, the company sent a letter to the employee and said, you better accept this money and turn down reinstatement, because if you come back, we're going to make your life miserable for you or something. Now, that's pretty unlikely would have happened, and if they tried to do something like that, it probably would have precluded a settlement from being reached. So let me just get at the nub of what my assessment is. My assessment is that the board has the ability to order a full remedy once there's not a text. The ability to do a full remedy, right? But the board as a federal agency, an agency in the United States government, still has to exercise its discretion. And so just because it has the ability, the permission to give a full remedy, doesn't mean that doing a full remedy is a valid exercise of its discretion. And so I think what's really working against you in this case is that you have the permission, at least if this agreement is read without the disproportionate forfeiture exception. I'd be interested to get your thoughts on that, but Judge Greenaway is probably going to ask it. But if it's read without that, then you have permission under the agreement to seek a full remedy. But you have to justify why that full remedy is not an abuse of discretion when the only flaw is email over text. Your Honor, two things, and I would like to address the jurisdiction argument and the arguments that were simply not raised to the board, because this board counsel being put in a somewhat awkward position now, given that arguments about the remedy were never addressed to the board. When do you raise an argument on remedy? After the board issues a remedy, it's too late to raise an issue on remedy. Very simply, when the general counsel reissued the complaint and sought a default judgment, it asked for a full remedy. And at that point, the company before the board could have presented an argument that imposing a full remedy would be improper. It didn't do so. Now, admittedly, the agreement that was reached did state that the only issue that could be raised on appeal would be whether there's full compliance. But the chance of success is not an extraordinary circumstance that would preclude it from being raised to the board. And had it been raised to the board, the board had several ‑‑ I'm so sorry to interrupt, but you can't say that the agreement says this and we've got to live by this. But, you know, the agreement also says that, but you don't have to live by that. That can't be right. Your Honor, if I could please clarify, because, yes, the board had arguments made to the board. The board could have stated, look, the agreement says nothing else can be raised. That's it. We're not addressing it. The board could have made alternative arguments and said, on the facts of this case, although we don't think they have merit, we're going to address in an alternative argument why the full remedy is being imposed here. Or the board could have found that the company, on the particular facts of this case and the particular arguments made, gone ahead and addressed the merits and either found merit to them or rejected them. So it definitely could have addressed them. And it's not before this Court for the first time for the company to start raising complaints about the remedy. But, again, I do want to clarify what a full remedy simply means. It could mean, one, as long as a valid offer of reinstatement was made, there's nothing punitive with that. This individual is not going to be owed four or five years of back pay. Secondly, what it could mean, however, is – I mean, when does it get punitive? I guess you're stipulating that if the individual was owed four or five years of back pay, that would be punitive? No, I'm not –  No, as counsel, I'm not saying that would be punitive. I'm just simply saying that as long as a valid offer – But what would be punitive in your view? Because the case law says a punitive remedy is impermissible. It's an abuse of discretion. And I'm kind of at a loss for thinking the only thing that wasn't done was an email over text. And so it strikes me that when you begin to add on violation after remedy, violation after remedy, violation after remedy, violation, sooner or later the weight of that begins to get punitive. And I guess you're saying that, well, you should have objected before we issued that because we let you know that we wanted a full remedy. And because you didn't, you waived it. And now we're going to do this, regardless of if it's punitive, because you waived it. Your Honor, again, the – 10E is mandatory. It's not – And there's a very strong jurisdictional argument here as to challenges to the remedy are simply not before this Court, given they were never raised to the Board. But having said that, and I apologize that I'm not communicating clearly as to what exactly a full remedy means. The full remedy does not mean that everything starts from scratch and it pretends as though nothing was ever accomplished in the settlement. It simply means, for example, as long as a valid offer of reinstatement was made, there's no additional back pay that's going to be owed in that context. But in context of the settlement, hypothetically speaking, possibly this discriminatee was owed $21,000 or $22,000. But for purposes of settlement, the parties agreed, the region in conjunction with the discriminatee, in conjunction with the company, agreed to accept a little bit less to take the settlement. So conceivably, to impose a full remedy could mean that that individual  But it wasn't a full remedy. It wasn't a traditional remedy as to what, had there been a Board order, what the Board would have imposed under a Board order. That's the type of thing that I think, again, I think there's a misconstruing of the nature. And again, it's speculation on counsel's part because I can't speak for that and that would be an issue for compliance. But I think overall there's a misconstruing that somehow a full remedy is opening up this Pandora's box and it's being really punitive. And the Board's decision itself recognizes and states that the company will not be required to do anything that it hasn't already done. Well, you know, when you're talking, I hesitate to say this, but I'm going to say it anyway. I think your response is very fulsome, but it's missing the mark, right? First of all, can we just please talk about this texting versus emailing? Tell me substantively why there's a difference and why does it matter? Because now that your adversaries put on the record that it's a relatively small shop, I don't get it. Your Honor, this was, first of all, this is a company that clearly meets the Board's jurisdiction, had over half a million dollars of business, has over 20 employees. So it's a reasonably sized employer. 2,800? I'm sorry, over 20 employees. And over half a million dollars of revenue for the Board's jurisdiction. That was in the complaint. As far as the number of employees, that's somewhere in the record. I apologize, I don't have the specific number. But over half a million dollars of revenue, that is, in the complaint. As far as the difference, I mean, from a personal level, people and groups that I receive text messages from are very different than those that I receive emails from. But, again, this was a negotiation, a give and take between the company, the region, and it was determined. Again, not every settlement agreement contains multiple ways that the notice needs to be handled. But most of your cases, when they talk about electronic communication, use the terms texting and emailing interchangeably. Your Honor, what Board cases have talked about is that the method that the employer customarily communicates with employees, which could potentially be texting. Where in the record is it customary that it's texting? Your Honor, the settlement agreement, by its very nature, that is what the company agreed to do. Nobody forced it on the company. I heard you say that in your, or I read that you said that, in your papers. But it's not, you're going to tell me where it is. But as I looked at the complaint, I didn't see anything. I saw it in the remedy section, but I didn't see it in the factual allegation. So, of course it's listed that they should text. I get that. But I don't understand the difference. The issue is communication, and 20 people are in the shop. It was communicated. So how is that not punitive? It's not punitive because it's simply holding the company to the terms of what it was supposed to do and what it said it would do and what it agreed to do and was repeatedly told it needed to do. No, no, no, no. That's different. That's different. What, holding the company to the terms of what it would do would just mean in order saying you have to text. Right? Then you've exercised the permission that you have under the agreement to do a full remedy. Right? And then the question is how much of your discretion did you use in that full remedy space? And what you really have to explain to the panel is why this amount of remedy, going to the full extent of the full remedy, is permissible as opposed to a more minor amount of remedy that seems like it would be all that would be needed in this case because that is still discretionary. And so it's the panel's exercise of going to the very limit of its discretion when in reality, if it was just concerned with non-punitive purposes, it seems that something far, that negotiated term that you said they negotiated for, you could have just said, hey, we want you to text. That's the only remedy. We don't need a full remedy here. We're going to use our discretion. The injustice that we see, the term that we see you didn't comply with is you didn't text. That's what we want remedied. Now, the rest of the full remedy, we're going to use our discretion, and we don't think that's needed here. Sooner or later, I don't think that federal agencies get to automatically exercise all of the powers that they have in every instance. And you have to explain why the exercise of the power in a given instance is not an abuse of discretion. And that's the problem that you have here because what strikes me is the sole basis that you could do in a non-punitive way is say, yeah, just text. We're good. You send out the text. We're good.  And, Your Honor, again, I think there's a misconception as to what power the board is supposedly using. And first of all, in cases where there are default judgments, the board typically will impose a full remedy. In fact, the company is not cited to any case involving a default judgment where the board has not imposed a full remedy. It has cited to kind of an analogous type situation, which is not only distinguishable, but even in the cases the company cites, in one of those cases, the board had referred to mostly complied where the record actually shows, and that was, I believe, the Dicester case, where there had actually been full compliance with all of the terms. So is it the board's policy in a default case to not exercise any of its discretion anywhere along the way and go automatically to a full remedy? Your Honor. Or does it ever exercise their discretion when they have full remedy capability? Your Honor, I am not aware of any case, nor is the company cited to any case, that the board has not issued a full remedy. In all of full. So they have a pattern of practice of not exercising discretion when there's a default? Well, Your Honor, they're using their discretion to impose a full remedy consistent. To always issue a full remedy. Consistent with the settlement agreement, consistent with the reissued complaint. And again, the full remedy, it simply means here that there would be a board order enforced by this court that would involve not just the text that would be very different than the text that would have existed earlier, because earlier, again, the company had not acknowledged that it committed any unfair labor practices. The text here would state that this was being done pursuant to a board order and pursuant to it having committed unfair labor practices. Your argument is that the substance of the email that you acknowledge was sent in April was not commensurate with the substance of what the text should have been? No. Your Honor, as counsel, what I'm trying to state is that putting aside that this was never sent by text and putting aside that email that was sent, it's not even clear that complied with the board requirements as far as having additional language with it. But if this case is enforced by the court, the text that would be sent to the employees would be a very different notice than the notice that was originally communicated to employees, because this notice would state consistent with the agreement, consistent with the board order. It would state that the company has committed unfair labor practices, and it would be stating that it's pursuant to a board and court order. So there would be a difference. So I'm so sorry. Tell me what's in the record with regard to the substantive difference between the email that was sent and what the text should have been. Sure. The original notice that was posted and that was subsequently emailed, again, because the agreement contained a non-admissions clause, the company had not admitted that it committed any unfair labor practices. So a text at this point, if the order is enforced by the court, would contain different language, acknowledging that it had committed unfair labor practices and saying that it was being done pursuant to a board and court order. As far as the email that was sent, I think there's a misperception in what I might have said earlier. The email that was sent earlier was consistent with what had been read and what had been posted. But as part of the agreement, there was certain language that was supposed to preface the sending of the notice. There's no evidence in the record that that language that was supposed to preface what was emailed was included with the email. It's just to explain why it was being sent to employees and what the purpose of it was. And there's no evidence that that language was ever in any way sent to the employees when that message, putting aside that it was email over text. Okay. So your argument is not that substantively they're the same and we're just saying that it wasn't texted. So we're annoyed that it wasn't texted. Your argument is that substantively what was in the email that was sent to the employees is substantively different than the text they should have sent. Your Honor, not what should have sent at the time, but that they would be required to send it now. That's not different. Yeah. Right? Yeah. Right. I mean, what if they iMessaged instead of texted back then? Is that the sort of thing that gets a full remedy? Your Honor, again, I wasn't party to the negotiations that took place, but there's a reason it said text. There's a reason it was included. You know, I forget the movie. Someone's going to remind me that we have a failure to communicate. And I'm going to say that it's my fault, right, because I'm generally good at communication. I can't believe the disappointment. I can't leave this word out there. Well, I just ate, sir. Oh, well. I'm sorry. So here's what I want to make sure that I understand. Yes, Your Honor. Right? The employer was supposed to send a text on a particular date, right? The text was supposed to say ABC, right? Okay. They sent an e-mail instead of a text, right? That's correct. Did the e-mail say ABC? Yes. The e-mail from what's in the record did say ABC. There's no evidence of the record. It also contained the preface paragraph that it was supposed to contain when it was sent as to why it was being sent, what the purpose of the notice being sent was. Okay. So then now we're back to the question. I thought that we had a different factual situation than I originally conceived. Now I understand. Okay. So if the e-mail had the content that it was supposed to, right, then, you know, this exercise of discretion that the judge keeps alluding to I think is a live question. You've attempted to respond to it. I'm not asking you to repeat yourself. But if there is something additional that you want to say on that point, I'd love to hear it. Your Honor, I'm not sure, and I have to say, Rose, I'm way over my time, I'm not sure that I have anything in addition to say except that the terms of this agreement were not by accident. They were there for a reason. The question of the decision to grant the default, our review is plenary on that, correct? Your Honor, it's whether or not the board abused its discretion in issuing its default judgment. Right. The grant of the default. That's plenary. Our standard of review is plenary, no? It's a question of law or am I wrong about that? It's a question of whether the board acted consistently with its rules and acted and abused its discretion in application of its own rules. So we're looking at the whole record and we're going to evaluate the whole record based on whether the board abused its discretion. So we can look at whatever we want that's in the record to make that decision, right? Your Honor, there would have to be a basis for why this court would find that it abused its discretion and that the board acted improperly in issuing. Then maybe that exists. Perhaps that exists. Your Honor, at the same time, it's not for this court to engage in de novo review within the record. This is not a factual question before this court. It is ultimately a legal question before this court. It's a very simple question of whether the board abused its discretion. The facts are already in dispute. There's no factual question here. Remedial orders we look at through the abuse of discretion lens, right? That's correct, Your Honor. This is a remedial order? The remedy, the aspect of the board's full remedy would be just as any other part of this default judgment before this court would be an abuse of discretion. The board obviously has broad discretion in issuing its remedy, and so that would also be an abuse of discretion. Thank you, Your Honor, unless there are any further questions. Judge Cowen, do you have anything further? Yeah, I'd like to just go back to something that Judge Greenway asked you some time ago, and I'm not quite sure I understand your answer. But don't you agree that at least in this specific case, there was really no real significance to texting as opposed to the e-mail as a specific method to be used to satisfy the notice obligation? Your Honor, with all due respect, I would not agree that there's no substantial difference. Again, on a personal level, there's a big difference between texting and e-mailing. If I inadvertently e-mail my children something wanting a prompt response instead of texting them, I'm going to be waiting quite a while for a response. For purposes of this settlement, there is a reason. Because again, the board will customarily require electronic notice, which could be by intranet, internet, texting, e-mail. Excuse me, I don't mean to cut you off, but my question is very simple. What is the significant difference between, in this case, texting and the e-mailing? In this case, it's very simple. That for reasons that were determined at the time the settlement agreement was reached, that the employees would be texted. And there's a reason that was in there. Okay. Judge, can I just ask what that reason is? Your Honor, I can't give the court a specific reason except that that was what was determined. Again, not all settlement agreements contain. So you don't know the reason, and you want us to say it was an abuse of discretion. Because the board doesn't have to provide a reason to this court at this stage of the process. There is a settlement agreement that was voluntarily entered into that the company agreed to comply with a specific term. And when what other discussions might have taken place at that time or other mechanisms or other ways to handle the notice, that's neither here nor there. This is what the parties agreed to in a give and take process. And there's a reason it's in there. They agreed to it. The board's region didn't force them to do something. It was agreed to that this is the best way to communicate the notice and it needs to be done. It's going to be posted. It's going to be read. And it's going to be texted. That's what it was agreed to. And if this court has no further questions. Thank you. Thank you. I left myself a couple minutes on rebuttal. If there are any questions, I'll be glad to answer. If not, I'll rely on the papers that are submitted. Judge Cowen, do you have anything, sir? No, sir. Thank you. Thank you, Judge. Thank you to both counsel. And we'll take the matter on.